IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| **MICHAEL KAPINOS,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>**ON POINT ALL SERVICES LLC.**, a Florida company,<br><br>*Defendant,* | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

**CLASS ACTION COMPLAINT**

Plaintiff Michael Kapinos ("Plaintiff Kapinos" or "Kapinos") brings this Class Action Complaint and Demand for Jury Trial against Defendant On Point All Services LLC. ("Defendant OPAS" or "OPAS") to stop the Defendant from violating the Telephone Consumer Protection Act by making telemarketing calls *without consent* to consumers who registered their phone numbers on the National Do Not Call registry ("DNC). Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff, for this Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

**PARTIES**

1. Plaintiff Michael Kapinos is a resident of Apopka, Florida.

2. Defendant OPAS is a Florida registered company headquartered in Orange City, Florida. Defendant OPAS conducts business throughout this District, and throughout the U.S.

**JURISDICTION AND VENUE**

3. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

4. This Court has personal jurisdiction and venue is proper since the Defendant has its headquarters in this District and because Plaintiff resides in this District.

## INTRODUCTION

5. As the Supreme Court explained at the end of its last term, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

6. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

7. A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

8. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

9. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

10. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

11. Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

12. According to online robocall tracking service "YouMail," 4.9 billion robocalls were placed in March, 2021, at a rate of 159.4 million per day. www.robocallindex.com (last visited April 13, 2021).

13. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

14. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

15. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

**COMMON ALLEGATIONS**

16. Defendant OPAS markets home energy saving products to consumers in central Florida.[3]

17. OPAS operates using the d/b/a On Point Solar, based on Plaintiff's experience.

18. OPAS is making unsolicited calls to consumers who are registered on the DNC.

19. To make matters worse, Defendant OPAS continues to place calls to consumers even after they have explicitly told OPAS to stop calling.

20. For example, in Plaintiff Kapinos' case, Defendant OPAS placed multiple calls to his residential phone number which is registered on the DNC despite instructing OPAS to take his phone number off their calling list.

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf
[3] https://onpointallservices.com/

3

21. OPAS relies on companies such as Sun Operative to assist it in generating leads, as per an endorsement from Renee Skinner, CEO of OPAS provided on SunOperative.com. Skinner, the CEO of Defendant OPAS states, "We're setting and selling like crazy from your leads! This last batch is the BOMB! We're expanding as a direct result of your leads… Thank you both so much for the best leads ever!" [4]

22. By relying on companies like Sun Operative, OPAS assumes that it has sufficient consent to place telemarketing calls to residential phone numbers. However, it appears that many consumers never provided their consent to be called.

23. Many consumers have posted their complaints online about unsolicited telemarketing calls that they have received from Defendant OPAS including: "Do not do business with this company. They perform illegal robocalls to lure in customers. If they violate the law in marketing, then how can you trust them to be ethical when working on your house? Better to avoid them."[5]

24. In response to these calls, Plaintiff brings forward this case seeking injunctive relief requiring the Defendant to cease from violating the Telephone Consumer Protection Act, as well as an award of statutory damages to the members of the Classes and costs.

## PLAINTIFF KAPINOS'S ALLEGATIONS

25. Plaintiff Kapinos registered his landline phone number on the DNC on June 29, 2003.

26. Plaintiff's landline phone number is not associated with a business and is used for personal use only.

27. Plaintiff started receiving unsolicited calls from Defendant in November of 2020.

28. The call display for the calls displayed the name of Defendant On Point Solar.

29. When Plaintiff answered the calls, he was told that they were calling to offer solar energy saving products and installations.

---

[4] https://sunoperative.com/
[5] https://www.google.com/search?q=On+Point+All+Services%2C+llc

30. No company name was provided by the live employees.

31. Plaintiff told the live callers that he was not interested and specifically asked for the calls to stop.

32. Despite his opt-out requests, the calls continued.

33. Plaintiff noted that all of the calls were from different phone numbers.

34. Plaintiff received an unsolicited call from Defendant on December 29, 2020 from 352-631-7273 displaying the name On Point Solar.

35. This call was not answered.

36. Plaintiff received another call on December 30, 2020 at 11:30 AM from Defendant, from phone number 321-394-9670 which displayed on his caller ID as On Point Solar:



37. When Plaintiff answered the call he was told that the call was regarding solar products and services.

38. Plaintiff asked how the company got his contact information and was told that he allegedly filled out an online survey.

39. Plaintiff asked the employee for the company name and was told it is On Point All Services.

40. Plaintiff then told the employee not to call his number again.

41. Plaintiff received additional unwanted calls from Defendant despite another clear opt-out request.

42. The majority of these calls were not answered.

43. On February 2, 2021 Plaintiff received an unsolicited call from Defendant displaying phone number 698-5864 at 10:08 AM and against the caller ID identifying the caller as On Point Solar.



44. Plaintiff answered the call and was once again told the call was regarding solar energy savings and installations.

45. Plaintiff told the live employee that he was not looking for Defendant's services.

46. The employee replied by saying that Plaintiff was in fact looking for Defendant's services and then jokingly asked if Plaintiff needed drywall or house painting.

47. Plaintiff hung up the phone.

48. Plaintiff was not looking for solar energy installations or products since he already installed solar in his house more than 3 years prior to the calls.

49. Plaintiff did not give consent to the Defendant calling him, and did not complete an online survey involving consent to be called regarding solar products or services.

6

50. The unauthorized solicitation telephone calls that Plaintiff received from OPAS have harmed Plaintiff Kapinos in the form of annoyance, nuisance, and invasion of privacy, and disturbed the use and enjoyment of his phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on the phone.

51. Seeking redress for these injuries, Plaintiff Kapinos, on behalf of himself and Classes of similarly situated individuals, bring suit under the TCPA.

## CLASS ALLEGATIONS

52. Plaintiff Kapinos brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seek certification of the following Classes:

> **Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant or an agent called on behalf of Defendant more than one time, (2) within any 12-month period, (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason Defendant called Plaintiff, and (5) for whom the Defendant claims they obtained the person's number in the same manner as Defendant obtained Plaintiff's number.
>
> **Internal Do Not Call Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant called after the consumer asked for the calls to stop (2) within any 12-month period (3) for substantially the same reason Defendant called Plaintiff.

53. The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, their subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant has been fully and finally adjudicated and/or released. Plaintiff Kapinos anticipates the need to amend the Class definitions following appropriate discovery.

54. **Numerosity**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable.

55. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

(a) Whether Defendant's conduct violated the TCPA;

(b) Whether the Defendant placed multiple calls within a 12-month period to Plaintiff and other consumers whose telephone numbers were registered with the DNC for at least 30 days of the time of each call;

(c) whether the Defendant engaged in telemarketing without implementing adequate internal policies and procedures for maintaining an internal do not call list;

(d) whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

56. **Adequate Representation**: Plaintiff Kapinos will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. Plaintiff Kapinos has no interests antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiff. Plaintiff Kapinos and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff Kapinos nor his counsel have any interest adverse to the Classes.

57. **Appropriateness**: This class action is also appropriate for certification because the Defendant has acted or refused to act on grounds generally applicable to the Classes and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with

respect to the Classes as wholes, not on facts or law applicable only to Plaintiff Kapinos. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## FIRST CLAIM FOR RELIEF
### Telephone Consumer Protection Act
### (Violation of 47 U.S.C. § 227)
### (On Behalf of Plaintiff Kapinos and the Do Not Registry Class)

58. Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

59. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or his telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

60. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.  47 U.S.C. § 227(c).

61. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff Kapinos and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

62. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff Kapinos and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of the Defendant in violation of 47 C.F.R. § 64.1200, as described above.

63. As a result of Defendant's conduct as alleged herein, Plaintiff Kapinos and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

64. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

## SECOND CLAIM FOR RELIEF
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Kapinos and the Internal Do Not Call Class)**

65. Plaintiff repeats and realleges paragraphs 1-57 of this Complaint and incorporates them by reference herein.

66. Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or

> entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.
>
> (4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.
>
> (5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.
>
> (6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

67. Defendant placed calls to Plaintiff and members of the Internal Do Not Call Class on behalf of the Defendant without implementing internal procedures for maintaining a list of persons who request not to be called by the entity and/or by implementing procedures that do not meet the minimum requirements to allow the Defendant to initiate telemarketing calls.

68. The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

69. The Defendant has, therefore, violated 47 U.S.C. § 227(c)(5). As a result of Defendant's conduct, Plaintiff and the other members of the Internal Do Not Call Class are each entitled to up to $1,500 per violation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Kapinos individually and on behalf of the Classes, prays for the following relief:

70. An order certifying this case as a class action on behalf of the Classes as defined above; appointing Plaintiff Kapinos as the representative of the Classes; and appointing his attorneys as Class Counsel;

71. An award of actual and/or statutory damages and costs;

72. An award of attorney's fees;

73. An order declaring that Defendant's actions, as set out above, violate the TCPA;

74. An injunction requiring the Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Classes; and

75. Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Kapinos requests a jury trial.

DATED this 13th day of April, 2021.

        **MICHAEL KAPINOS**, individually and on behalf of all others similarly situated,

        /s/ Stefan Coleman
        Stefan Coleman (FL Bar No. 30188)
        law@stefancoleman.com
        LAW OFFICES OF STEFAN COLEMAN, P.A.
        201 S. Biscayne Blvd, 28th FL
        Miami, FL 33131
        Telephone: (877) 333-9427
        Facsimile: (888) 498-8946

Avi R. Kaufman (FL Bar No. 84382)*
kaufman@kaufmanpa.com
KAUFMAN P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881

*Attorneys for Plaintiff and the putative Classes*

*Trial counsel